# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

RAYMOND BRUCE BELTON,

          Plaintiff,

          v.                                    Case No. 07-C-925

UNITED STATES OF AMERICA,

          Defendant.

## DECISION AND ORDER

On March 15, 1989, Raymond Bruce Belton ("Belton") was sentenced to thirty years imprisonment for conspiracy to possess more than five kilograms of cocaine with intent to distribute. He is currently incarcerated in federal prison. On December 6, 2004, Belton filed pro se a motion in his criminal case (Case No. 08-CR-130) captioned "motion for leave to incorporate alternative claims for other equitable relief resulting from the Government unilaterally disposing of the Plaintiff's property and request for an evidentiary hearing." The motion, which cites Federal Rule of Criminal Procedure 41(g), seeks a remedy for a due process violation arising out of the seizure and attempted forfeiture of Belton's jewelry back in 1989. Because a Rule 41(g) motion is a civil proceeding subject to the usual procedural requirements for maintaining a federal civil suit, which in the case of a prisoner includes the requirements of the Prison Litigation Reform Act ("PLRA"), United States v. Howell, 354 F.3d 693, 695 (7th Cir. 2004), the judge presiding over Belton's criminal case, Chief Judge Rudolph T. Randa, ordered the Clerk of Court to file Belton's motion for return of property as a civil action. This civil action resulted, which the clerk gave a filing date of October 17, 2007. In his order, Chief Judge Randa also told Belton to pay the $150 filing fee for civil

suits, the fee at the time Belton filed his motion in 2004, as opposed to the present day $350 filing fee. This matter comes before the court on Belton's petition to proceed in forma pauperis.[1]

Pursuant to 28 U.S.C. § 1915(b)(1) and Chief Judge Randa's order, the plaintiff is required to pay the statutory filing fee of $150.00. If a prisoner does not have the money to pay the filing fee, he or she can request leave to proceed in forma pauperis. To proceed with an action in forma pauperis, the prisoner must complete a petition and affidavit to proceed in forma pauperis and return it to the court with a certified copy of the prisoner's trust account statement showing transactions for the prior six months. The court then assesses and, when funds exist, collects from the plaintiff at the time the action is filed an initial partial filing fee of 20 percent of the average monthly deposits to or the average monthly balance in the prisoner's trust account for the six-month period immediately preceding the filing of the complaint.

In this case, the plaintiff has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint. The prisoner has been assessed and paid an initial partial filing fee of $21.95.

The federal in forma pauperis statute also provides that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that" the action, (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A claim is legally frivolous when

---

[1]When the clerk's office reassigned Belton's civil action, it was randomly assigned to Magistrate Judge Callahan. However, Belton's motion comes before me for a ruling because I am the duty judge this month, and magistrates lack authority to enter appealable orders in civil cases absent the consent of all parties. Such consent is lacking in this case.

it lacks an arguable basis either in law or in fact.  Denton v. Hernandez, 504 U.S. 25, 31 (1992); Neitzke v. Williams, 490 U.S. 319, 325 (1989); Hutchinson ex rel. Baker v. Spink, 126 F.3d 895, 900 (7th Cir. 1997).  The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke, 490 U.S. at 327.  "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass."  Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To avoid dismissal for failure to state a claim, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  It is not necessary for the plaintiff to plead specific facts; his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Erickson v. Pardus, __ U.S. __, 127 S. Ct. 2197, 2200 (2007) (citations omitted).  In deciding whether the complaint states a claim, the court must accept as true all of the factual allegations contained in the complaint.  Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1965 (2007).  The court is obliged to give the plaintiff's pro se allegations, however inartfully pleaded, a liberal construction.  See Erickson, 127 S. Ct. at 2200 (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

As indicated, this civil action stems from Belton's criminal case.  On March 15, 1989, United States District Judge Robert W. Warren sentenced Belton to thirty years imprisonment for conspiracy to possess more than five kilograms of cocaine with intent to distribute.  See United States v. Belton, No. 88-CR-130 (E.D. Wis. March 15, 1989).  Since that time, Belton has appealed the conviction, filed a collateral attack on the judgment and appealed from that denial, unsuccessfully sought reduction of his sentence, and, as is

relevant to this case, made multiple attempts to obtain the return of property seized from him by the United States Drug Enforcement Administration ("DEA").

Reviewing Belton's motion for return of property and attached documentation, it appears that Belton's claim for return of property began on January 22, 1991, when in his criminal case he filed a motion for return of jewelry and other property seized by the DEA. The DEA claimed that the jewelry was properly forfeited on August 23, 1989, pursuant to an administrative forfeiture proceeding, and that the "other property" was being retained as evidence pending conclusion of the criminal proceedings. On June 29, 1992, Judge Warren ruled that the DEA did not provide proper notice of the jewelry's forfeiture, in violation of Belton's due process rights. He therefore vacated the forfeiture. Judge Warren further ordered that, since the criminal proceedings had concluded, the government was required to return the other property to Belton.[2] The government initially appealed this ruling but subsequently dismissed the appeal.

Prior to Judge Warren's ruling, however, the government sold Belton's jewelry at public auction for $4,180.[3] Although the government offered to pay him this sum, Belton claimed that the jewelry was worth $40,150 and that the government owed him this amount as damages for the due process violation. On April 25, 1993, Belton sent a letter to the DEA, which the DEA appears to have construed as an administrative claim relating to the due process violation.[4] On August 20, 1993, the DEA sent a letter to Belton by certified

---

[2]The "other property" (i.e., not the jewelry) was presumably returned to Belton pursuant to Judge Warren's order. The present case involves only the jewelry.

[3]I presume that the government sold the jewelry before Judge Warren vacated the forfeiture, but Belton does not plead, and the record does not otherwise indicate, when the jewelry was sold.

[4]Although Belton did not attach his letter to the complaint, he did attach the DEA's response. (*See* Exhibit C to Docket Entry #1.) Based on the DEA's response, it appears

4

mail informing him of the government's decision to pay him no more than the proceeds from the jewelry's sale.[5]  The letter informed Belton that this decision was final.  Around the same time, on January 22, 1993, Belton brought a motion for the market value of the jewelry in his criminal case, but in June 1993, Judge Warren denied the motion, stating that Belton's remedy was a civil action against the DEA.  Belton did not appeal.

On October 12, 1993, Belton brought a civil action against the DEA and individuals within the United States Attorneys Office, seeking damages for the due process violation. For unknown reasons, Belton voluntarily dismissed this case after the government answered the complaint.  The government filed a letter following Belton's motion to voluntarily dismiss the case stating that although it did not object to a dismissal of the civil case without prejudice, it would object to any attempt by Belton to reinstitute a motion for return of property in the criminal case.  Judge Warren granted Belton's request to voluntarily dismiss the case.

On August 15, 1994, Belton brought another motion in his criminal case seeking the return of his jewelry or its market value.  The court again denied the motion on the ground that it had no authority to award Belton damages as part of his criminal case.  The court again informed Belton that the way to pursue his damages claim was to bring a civil action against the government, possibly under the Federal Tort Claims Act.  Belton appealed this ruling, but the Seventh Circuit dismissed the appeal.

In 1996, Belton filed a civil action against the DEA in a California federal district court, once again seeking return of his jewelry or its market value.  The California court

---

that Belton filed some form of administrative claim on or before April 25, 1993.

[5]The DEA letter also informed Belton of its decision to pay him an additional $2,400 relating to a forfeited mobile telephone.  The telephone is not at issue in the present case.

dismissed the action for lack of subject matter jurisdiction because Belton had not alleged facts showing that the claim fell within a waiver of the United States's sovereign immunity. The court advised the plaintiff that if he wanted to re-file his claim, he might do so in the proper venue (the present District) so long as he established that his claim was brought pursuant to a statute that waived the United States's sovereign immunity, such as the Federal Tort Claims Act or the Tucker Act.

On June 5, 1997, Belton returned to this District and filed yet another motion in his criminal case for his jewelry or its market value. Judge Warren died before he could rule on the motion, and before the judge to whom Belton's criminal case was reassigned (Judge Randa) could do so, Belton, on February 8, 1999, filed a petition for writ of mandamus with the court of appeals, asking the appellate court to compel the district court to rule on the motion. On July 1, 1999, the Seventh Circuit denied the petition. On September 7, 1999, Judge Randa considered Belton's 1997 motion and denied it. Belton did not appeal.

After Judge Randa denied Belton's 1997 motion, it seemed as though Belton had given up his quest for damages. But then on April 7, 2004, the DEA sent a letter to Theodora Belton, who appears to be a relative of Belton's. (See Exhibit D to Docket Entry #1.) The letter references the DEA case number and the seizure number for Belton's jewelry, and states that upon review of the matter, the DEA could not confirm whether Ms. Belton ever received the check representing the proceeds of the sale of Belton's jewelry.[6] This is apparently what the DEA tried to pay Belton back in 1993. The letter informed Ms. Belton that the DEA was enclosing a new check to her, and that payment was made contingent on her and Belton releasing the DEA from further liability in connection with the

---

[6]The check also included compensation for the mobile telephone.

jewelry's seizure and forfeiture. This prompted another letter from Belton (Exhibit D of Docket Entry #1), who reiterated his position that he was owed the market value of the jewelry, not just the amount fetched at auction.

That brings us to the motion filed in the criminal case in December 2004, which pursuant to Chief Judge Randa's order commenced the present action and is the document under review for purposes of screening under 28 U.S.C. § 1915. The motion states that Belton wants to bring two "alternate" claims for relief. (Docket Entry #1 at 1.) The first claim requests a court order directing the government to remit to Belton the proceeds of the sale of his jewelry, $4,180. The second claim requests damages in the amount of $32,970, which appears to represent the difference between $4,180 and what Belton perceives the market value of his jewelry to have been. Each claim is based on Judge Warren's prior ruling that the DEA deprived Belton of his jewelry without due process. Essentially, Belton seeks a remedy for this due process violation.

Although Belton brings his motion pursuant to Federal Rule of Criminal Procedure 41(g), that rule cannot provide him with any relief at this point. As stated in <u>United States v. Sims</u>, 376 F.3d 705, 708 (7th Cir. 2004), the proper office of a Rule 41(g) motion is, before any forfeiture proceedings have been initiated, or before any criminal charges have been filed, to seek the return of property seized without probable cause, or property held an unreasonable length of time without the institution of proceedings that would justify the seizure and retention of the property. Additionally, if during criminal proceedings the defendant's property was never forfeited, Rule 41(g) can be invoked after the proceedings have concluded to recover the property when the property is no longer needed as evidence. <u>Id.</u> Here, Belton's property was subject to administrative forfeiture, which takes the case out of Rule 41(g) and transforms it into one challenging an administrative forfeiture on the

ground that it did not comply with due process. See Howell, 354 F.3d at 695-96 (recognizing that claim for return of property that was administratively forfeited is not proper subject of Rule 41(g) motion, even though it seeks relief similar to that available under Rule 41(g)). Such a claim can be brought in federal court pursuant to the general federal question jurisdiction, 28 U.S.C. § 1331. Id. at 695; Garcia v. Meza, 235 F.3d 287, 290 n.3 (7th Cir. 2000); United States v. Duke, 229 F.3d 627, 629 (7th Cir. 2000). Because I have an obligation to liberally construe Belton's pro se motion, for purposes of screening under the PLRA, I construe Belton's motion as stating a claim for deprivation of property without due process of law, not a claim for the return of property under Rule 41(g).[7]

Because of the long and complicated history of this litigation, it turns out that Belton already litigated and prevailed on this due process claim back in 1992, when Judge Warren vacated the forfeiture after finding that the DEA failed to provide Belton with proper notice. Judge Warren appears to have made this ruling in the course of a Rule 41(g) motion (which, at that time, was Rule 41(e)). Howell and related cases now tell us that the proper procedural vehicle for such a due process claim is a civil action brought under the general federal question jurisdiction. 354 F.3d at 695. But Judge Warren did not have the benefit of Howell. In any event, the important point is that Judge Warren already determined that Belton's due process rights were violated by the failure to gI've adequate notice of the administrative forfeiture.

---

[7]Although I conclude that this action is not properly brought as a Rule 41(g) proceeding, I note that even if it were, Belton's claims for monetary relief would be barred by sovereign immunity, as Rule 41(g) does not constitute a waiver of the United States's sovereign immunity from suits seeking money from the treasury. Okoro v. Callaghan, 324 F.3d 488, 490-91 (7th Cir. 2003); see also United States v. Stevens, 500 F.3d 625, 628 n.3 (7th Cir. 2007).

8

Although Judge Warren vacated the forfeiture, by the time of that ruling the DEA had already sold Belton's property. Thus, the easiest remedy for a due process violation – return of the property – was unavailable. The DEA offered to pay Belton the proceeds of the sale, $4,180, but Belton wanted the full market value of the jewelry, which he thought was $40,150. He therefore brought another motion in his criminal case seeking the market value. Judge Warren denied this motion, informing Belton that if he wanted the market value of the jewelry (i.e., money damages) he would have to file a separate civil action against the government. Belton did not appeal this ruling.

Belton then brought a third motion in front of Judge Warren, again seeking monetary relief. As Judge Warren had already issued a final order on the damages issue, he construed the third motion as a motion for relief from the second order under Federal Rule of Civil Procedure 60(b). Finding no basis for relief from the earlier final order, Judge Warren denied the third motion.

All of this procedural history puts the present motion in a peculiar posture. Although Chief Judge Randa ordered the clerk to re-file the motion as a civil action, Belton originally filed the motion in his criminal case and appears to have viewed it as a continuation of the Rule 41(g) motions he previously filed. As such, the motion could be construed as another Rule 60(b) motion for relief from Judge Warren's June 2, 1993 final order. Indeed, Rule 60(b) seems to be the right characterization of Belton's motion, even though Chief Judge Randa ordered the motion to be re-filed as a new civil action. When the clerk re-filed the motion, it received its own case number and was randomly assigned to a new judge, but the motion was still just a continuation of the civil proceedings that Belton touched off by filing his Rule 41(g) motion back in the early 90s. See Howell, 354 F.3d at 695-96 (stating that Rule 41(g) motion filed in criminal case commences a civil proceeding). By filing the

9

motion, Bellton did not want to start a new civil proceeding, he wanted to continue his old one. This does not mean that Belton should have been permitted to continue his existing civil litigation without paying the filing fee that he never paid. But it does suggest that what should have been re-characterized as a civil action was not just the motion filed on December 6, 2004, but all of the proceedings relating to Belton's quest to recover the market value of his jewelry, proceedings that date back to at least 1991. Accordingly, I will construe the present motion as one for relief from a final order pursuant to Rule 60(b).[8]

Viewing Belton's motion through the lens of Rule 60(b), I find that it must be denied. First, Rules 60(b)(1) to 60(b)(3) do not apply because, under Rule 60(c)(1), motions brought under those subsections must be filed no later than one year from the date of the final order. The final order at issue here is Judge Warren's June 2, 1993 order denying Belton monetary relief for the due process violation, and thus any motion under Rules 60(b)(1) to (b)(3) is time barred. Second, motions under Rules 60(b)(4) to 60(b)(6) must be brought "within a reasonable time." Fed. R. Civ. P. 60(c)(1). Under no set of circumstances could Belton's motion filed on December 6, 2004 be considered to have been filed within a reasonable time of June 2, 1993. Further, even if the motion were timely, Belton does not meet the criteria of Rules 60(b)(4) to 60(b)(6). Subsection (b)(4) applies when "the judgment is void," and so has no application to this case. Subsection (b)(5) applies when a judgment has been satisfied, is based on an earlier judgment that has been reversed or vacated, or should no longer have prospective application. None of these circumstances applies to Judge Warren's order. Finally, subsection (b)(6) is a catch-all that applies when

---

[8]Although I construe the present motion as a continuation of the Rule 41(g) proceedings commenced in Belton's criminal case, because those proceedings are and always have been civil proceedings for which a filing fee must be paid, 28 U.S.C. § 1914(a); Howell, 354 F.3d at 695-96, and because Belton never paid the fee for this action, he remains liable for paying the fee now.

"any other reason justifies relief," and Belton has no such reason. Belton's motion makes the same claim he has been making since the early 90s – namely, that the government owes him the market value of his jewelry, not just the proceeds obtained at auction. Although he cites more recent case law, he points to no reason for disturbing the finality of Judge Warren's fifteen-year-old order. At most, Belton argues that this Court's earlier dispositions of his Rule 41(g) motions were erroneous, yet legal error is not grounds for relief under Rule 60(b). If Belton thought that any of this Court's earlier decisions were wrong, he should have appealed. Gleash v. Yuswak, 308 F.3d 758, 761 (7th Cir. 2002). Thus, construing Belton's motion as a Rule 60(b) motion, it is denied.

Even if I construed Belton's motion as commencing a fresh lawsuit, I would dismiss it as frivolous on the basis of the statute of limitations. In United States v. Duke, the Seventh Circuit held that claims challenging an administrative forfeiture on due process grounds are subject to a six-year statute of limitations, 28 U.S.C. § 2401(a).[9] 229 F.3d at 629. The claim accrues when the plaintiff discovers, or by the exercise of due diligence would have discovered, that he was injured and who caused the injury. Id. at 630. In the present case, Belton was injured when the forfeiture took place, and he learned of the forfeiture and that the DEA was responsible for it no later than June 29, 1992, the day on which Judge Warren vacated the forfeiture. Thus, under Duke, the limitations period for Belton's due process claim expired in June 1998.

The analysis in this case is complicated slightly by the fact that in Duke, the plaintiff sought only the return of his property, whereas Belton seeks monetary relief for the due

---

[9]Although the analysis in Duke has been superseded by statute, United States v. Sims, 376 F.3d 705, 707-08 (7th Cir. 2004), the Duke analysis still applies to forfeiture proceedings commenced before August 23, 2000, Duke, 229 F.3d at 629. Because Belton's forfeiture occurred in 1989, the Duke analysis applies here.

process violation. But this is just a difference in the type of relief requested; the underlying injury – deprivation of property without due process of law – is the same. And as stated in Duke, the statute of limitations begins to run from the date of discovery of the injury, not the date on which the plaintiff discovers that he or she is entitled to any particular remedy. Thus, no matter what relief a plaintiff seeks, under Duke the statute of limitations is six years from discovery of the forfeiture.

An additional wrinkle caused by plaintiff's request for damages is that a suit seeking damages from the United States must fall within a waiver of sovereign immunity. Most statutes that waive the sovereign immunity of the United States, such as the Federal Tort Claims Act ("FTCA"), come with their own time limitations, which potentially displace § 2401(a)'s "catch-all" statute of limitations. Thus, maybe a request for monetary relief will alter the limitations period after all. However, even if that were so, as explained below, it is clear that Belton's claims for monetary relief do not fit within any waiver of sovereign immunity, and therefore they must be dismissed for an independent reason – Belton seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(iii).

Belton's most promising avenue to damages is the Federal Tort Claims Act ("FTCA"), which waives the United States's sovereign immunity from suits seeking damages for, among other things, "injury or loss of property." 28 U.S.C. § 1346(b)(1). However, 28 U.S.C. § 2680(c) creates an exception from § 1346(b)'s waiver of sovereign immunity for "any claim arising in respect of . . . the detention of any goods, merchandise, or other property by . . . any other law enforcement officer." The Supreme Court held recently that the phrase "any other law enforcement officer" means all law enforcement officers. Ali v. Fed. Bureau of Prisons, __ U.S. __, 128 S. Ct. 831, 834 (2008). The phrase

therefore encompasses the DEA agents who seized Belton's jewelry. Further, the Supreme Court has held that the phrase "any claim arising in respect of" the detention of goods means any claim "arising out of" the detention of goods, and includes claims seeking damages for injury to property while it was being detained by law enforcement officers. Kosak v. Untied States, 465 U.S. 848, 854 (1984). Here, plaintiff seeks damages for a due process violation arising out of the detention of his jewelry, and therefore his claim falls within § 2680(c) and is barred by sovereign immunity. See Diaz v. United States, 517 F.3d 602, 613-14 (2d Cir. 2008) (holding that § 2680(c) bars claim seeking monetary relief for due process violation arising out of seizure and forfeiture of property).[10]

Even if § 2860(c) did not bar Belton's purported FTCA claim, I would dismiss it for failure to comply with the other procedural limitations of the FTCA. No one may file suit under the FTCA without first presenting an administrative claim to the appropriate federal agency. 28 U.S.C. § 2675(a); Kanar v. United States, 118 F.3d 527, 528 (7th Cir. 1997). The claim is forever barred unless an administrative claim is filed within two years after the claim accrues. 28 U.S.C. § 2401(b). An administrative "claim" consists of a writing that satisfies the following four elements: (i) notification of the incident; (ii) a demand for a sum certain; (iii) the title or capacity of the person signing; and (iv) evidence of this person's authority to represent the claimant. Kanar, 118 F.3d at 528. In the present case, Belton

---

[10]Although the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") amended 28 U.S.C. § 2680 to "re-waive" sovereign immunity for certain suits relating to forfeitures, see 28 U.S.C. § 2680(c)(1) - (4), the CAFRA amendments apply only to forfeiture proceedings commenced after August 23, 2000. Duke, 229 F.3d at 629. Here, the forfeiture proceedings relating to Belton's jewelry must have been commenced prior to June 29, 1992, the date on which Judge Warren vacated the forfeiture. Accordingly, the CAFRA amendments do not help Belton.

has not alleged that he made any such administrative claim, and I would dismiss his purported FTCA claim for that reason.[11]

Because I must construe Belton's pro se pleadings liberally, see Donald v. Cook County Sheriff's Dep't, 95 F.3d 548, 555 (7th Cir. 1996), I note that the DEA's August 20, 1993 letter to Belton references a writing sent by Belton to the DEA on April 25, 1993. Although the April 25 letter is not in the record, it is possible that the letter constituted the administrative claim required by 28 U.S.C. § 2675(a). Indeed, the DEA's August 20 response appears to be a final denial of Belton's administrative claim. However, if this were so, Belton was required to file the present lawsuit within six months after August 20, 1993, the date on which the DEA sent by certified mail its final denial of Belton's administrative claim. 28 U.S.C. § 2401(b). The present lawsuit, which was commenced on December 6, 2004, is much too late, and Belton's FTCA claim is therefore barred by the six month limitations period.

Finally, there is no need to give Belton leave to amend his complaint to allege compliance with the FTCA's procedural requirements because any amendment would be futile. See Johnson v. Dossey, 515 F.3d 778, 780 (7th Cir. 2008) (no need to give leave to amend where amendment would be futile). The only way that Belton's suit could be

_____

[11]Although normally a plaintiff need not plead compliance with the statute of limitations or other procedural limitations in order to state a claim under notice pleading standards, in a suit against the government, conditions on the waiver of sovereign immunity are not simply affirmative defenses but constitute conditions precedent to the plaintiff's ability to prevail. See John R. Sand & Gravel Co. v. United States, __ U.S. __, 128 S. Ct. 750, 752-54 (2008); Kanar, 118 F.3d at 530; Amwest Surety Ins. Co. v. United States, 28 F.3d 690, 694 (7th Cir. 1994). Thus, a plaintiff's failure to plead compliance with such conditions is grounds for dismissing a complaint for failure to state a claim upon which relief may be granted. Cf. Kaba v. Stepp, 458 F.3d 678, 687-88 (7th Cir. 2006) (holding that FTCA claim properly dismissed at pleading stage based on failure to comply with exhaustion and statute of limitations provisions in FTCA); Bellecourt v. United States, 994 F.2d 427, 430 (8th Cir. 1993) ("Presentment of an administrative claim . . . must be pleaded and proven by the FTCA claimant.") .

14

deemed timely is if he filed an administrative claim within two years after the claim accrued but the DEA never finally denied the claim.  This possibility of timeliness exists because, when a proper administrative claim is filed but the agency fails to make a final disposition of the claim within six months, the claimant can, at his or her option, deem the failure to be a final denial of the claim and bring suit under the FTCA.  28 U.S.C. § 2675(a); Miller v. United States, 741 F.2d 148, 150-51 (7th Cir. 1984).  In the present case, assuming that Belton filed an administrative claim within two years after his claim accrued (i.e., no later than two years after June 29, 1992, the date on which Judge Warren identified the due process violation), and assuming further that the DEA never made a final disposition of his claim, it is arguable that the six month limitations period never began to run because Belton never "deemed" the DEA's inaction to be a final disposition within the meaning of 28 U.S.C. § 2675(a) until he filed the present suit.

However, the Seventh Circuit has held that when a claimant files a claim in federal court more than six months after filing an administrative claim on which the government has not acted, the claimant is deemed to have exercised his or her option under § 2675(a) to treat the agency's inaction as a final disposition.  Miller, 741 F.2d at 150.  The filing of the complaint starts the six month limitations period of 28 U.S.C. § 2401(b).  Id.  In the present case, to the extent that Belton ever had the option to treat the DEA's failure to finally dispose of his administrative claim as a constructive final disposition, he exercised that option more than six months before he filed the present suit.  Belton brought a civil action seeking damages for the due process violation on October 12, 1993.  On August 15, 1994, Belton brought a motion in his criminal case seeking damages for the market value of his jewelry.  In 1996, he filed a second civil action seeking damages for the due process violation.  And on June 5, 1997, he filed yet another motion in his criminal case seeking

damages. For his administrative claim to have been timely, Belton would had to have filed it no later than June 29, 1994. Thus, assuming Belton fled his administrative claim on the last possible date, any action Belton took after January 29, 1995 (six months after the administrative claim was filed) to enforce his claim in federal court would have, pursuant to <u>Miller</u>, constituted the exercise of his option under 2675(a) to deem the DEA's inaction a final disposition. Thus, the lawsuit filed in 1996 started the six month clock, and even if that did not, the motion filed in 1997 would have. Either way, the motion filed in 2004, which commenced the present action, was untimely. Belton therefore could not, if given leave to amend, allege a viable claim under the FTCA.

I also consider whether Belton might have brought his claim for monetary relief under the Tucker Act, 28 U.S.C. § 1491, or the Little Tucker Act, 28 U.S.C. § 1346(a)(2). The Little Tucker Act waives the United States's sovereign immunity for claims not exceeding $10,000 and grants concurrent jurisdiction to district courts and the Court of Federal Claims. <u>See</u>, <u>e.g.</u>, <u>Pershing Div. of Donaldson, Lufkin & Jenrette Sec. Corp. v. United States</u>, 22 F.3d 741, 743 (7th Cir. 1994). The Tucker Act waives sovereign immunity for claims in excess of $10,000, but only if the plaintiff sues in the Court of Federal Claims. <u>See</u>, <u>e.g.</u>, <u>Global Relief Found., Inc. v. O'Neill</u>, 315 F.3d 748, 754 (7th Cir. 2002) (suits under Tucker Act belong to Court of Federal Claims). Here, plaintiff has asked for damages in excess of $10,000 and thus may not proceed under the Little Tucker Act. His potential Tucker Act claim may not be litigated in this court because jurisdiction belongs to the Court of Federal Claims. Although I might have authority to transfer the case to the Court of Federal claims, I decline to do so because the six-year statute of limitations, 28 U.S.C. § 2501, expired before Belton commenced this action. I also note that, to the extent plaintiff's claim for the $4,180 in proceeds falls within the Little Tucker Act, the statute of

limitations has expired on that claim, too.  See 28 U.S.C. § 2401(a) (six-year statute of limitations); Bray v. United States, 785 F.2d 989, 992 (Fed. Cir. 1986) (recognizing that § 2401(a) supplies the limitations period for Little Tucker Act claims).  For these reasons, Belton cannot proceed under the Tucker Act or Little Tucker Act.

I also consider whether Belton might have brought his claims for monetary relief pursuant to § 702 of the Administrative Procedure Act ("APA"), which waives the United States's sovereign immunity in suits seeking "relief other than money damages" because of the action of a federal agency.  The APA does not waive sovereign immunity with respect to Belton's damages claim, but perhaps his claim for the proceeds of the sale of his jewelry could qualify as a claim seeking "relief other than money damages."  Cf. Okoro, 324 F.3d at 491 ("a suit for proceeds is not a suit for damages").  However, once again the statute of limitations bars Belton's claim.  The applicable limitations period is provided by the six-year "catch-all" statute of limitations for civil actions against the United States, 28 U.S.C. § 2401(a).  See Macklin v. United States, 300 F.3d 814, 821 (7th Cir. 2002).  Because, as explained, Belton has not complied with § 2401(a), any potential APA claim is barred by the statute of limitations.

Had Belton sued the federal officials responsible for his due process violation, Belton might have sought monetary relief under Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), which allows suits for money damages against federal officials.  However, his present motion names only the United States as a defendant, which means I cannot construe the motion as stating a Bivens claim.  See Myles v. United States, 416 F.3d 551, 551-52 (7th Cir. 2005) (district court cannot construe complaint to state a claim against defendants that are not named in complaint and were never served with process).  And although I could give Belton leave to amend his complaint

17

to name the appropriate federal officials, id. at 552, doing so would be futile since the statute of limitations has run on any potential Bivens action. Bivens actions, like actions under 42 U.S.C. § 1983, are governed by the personal injury statute of limitations of the state where the alleged injury occurred. Delgado-Brunet v. Clark, 93 F.3d 339 (7th Cir. 1996). In Wisconsin, the relevant statute of limitations is six years. Gray v. Lacke, 885 F.2d 399, 409 (7th Cir. 1989) (holding that six year statute of limitations of Wis. Stat. § 893.53 applies to § 1983 actions). Because Belton's due process claim accrued well over six years before he commenced the present action, he cannot proceed under Bivens.

I also address whether Belton might be able to argue that equitable tolling of the any of the above statutes of limitation should apply. First, however, I note that the untimeliness of Belton's suit implicates the sovereign immunity of the United States, and it is therefore questionable whether equitable tolling can be applied at all. See John R. Sand & Gravel, 128 S. Ct. at 752-57. But even assuming that equitable tolling could be applied to one or more of the above claims, it is clear that Belton does not meet its criteria. Equitable tolling permits a plaintiff to delay filing suit beyond the statute of limitations if despite due diligence on his part he cannot obtain the information he needs in order to determine, in time to sue within the deadline, whether he has a claim on which suit can be founded. Yuan Gao v. Mukasey, 519 F.3d 376, 377 (7th Cir. 2008); Macklin, 300 F.3d at 823. Here, Belton has no excuse for failing to file his civil action seeking a remedy for the due process violation within the statute of limitations. He learned of the due process violation no later than the date on which Judge Warren identified it, June 29, 1992. After Belton learned that the DEA sold his jewelry, he brought a motion in his criminal case seeking damages. On June 2, 1993, Judge Warren denied the motion, instructing Belton that his remedy was a civil action. On October 12, 1993, Belton actually brought such a civil action, which he then

voluntarily dismissed. When he brought another motion seeking damages in his criminal case, Judge Warren, on May 19, 1995, again told Belton that his remedy, if any, lied in a civil action against the Untied States. Then in 1996, Belton brought yet another civil action seeking damages, this time in California. When the court dismissed that action, it again informed Belton that he might have remedies under the FTCA or Tucker Act if he brought his action in the proper jurisdiction. Given this history, it would be impossible to find that Belton exercised due diligence in pursuing his civil remedies. He was told numerous times that if he wanted a remedy for the due process violation, he had to bring a civil action in the proper forum. Despite this advice, he continually chose to pursue his remedies in his criminal case, insisting that Rule 41(g) was the proper procedural vehicle for obtaining monetary relief. It is not, and to the extent that he ever had a viable civil action under any of the above legal theories, that action is now time-barred.

To conclude, I construe the present motion as seeking relief from Judge Warren's June 2, 1993 order pursuant to Fed. R. Civ. P. 60(b), and I deny that motion. That is my decision. I also note alternative reasons for dismissing Belton's lawsuit in the event that his motion is deemed to have commenced a fresh civil action as of December 6, 2004. First, I would dismiss the motion (which, in that case, would be the complaint) as frivolous. Although the motion alleges a claim for deprivation of property without due process of law, as explained, such claim is clearly barred by the six-year statute of limitations, 28 U.S.C. § 2401(a), and thus is properly dismissed as frivolous. See Walker v. Thompson, 288 F.3d 1005, 1009-10 (7th Cir. 2002) (where affirmative defense of statute of limitations is plain on face of complaint such that suit can fairly be regarded as frivolous, court can dismiss action before answer is filed); see also Gleash, 308 F.3d at 760-61 (same). Further, because Belton seeks monetary relief from the United States and his claim does not fall

within any waiver of sovereign immunity that is not foreclosed to him because of his failure to comply with procedural prerequisites, his claim is also barred by sovereign immunity. Therefore, it must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii). Finally, I make clear that, to the extent Belton's motion is deemed to have commenced a fresh lawsuit, I would dismiss the entire suit, not simply Belton's "complaint," because Belton cannot cure his claim's defects by amending his pleading. If this were a separate lawsuit, rather than a Rule 60(b) motion, I would at this point direct the clerk to enter final judgment accordingly.

One last matter warrants discussion. Under 28 U.S.C. § 1915(g), a prisoner who has had three or more actions or appeals dismissed on the ground that they were frivolous, malicious, or failed to state claims upon which may be granted is barred from bringing an action or appeal in forma pauperis unless the prisoner is under imminent danger of serious physical injury. The question is whether Belton has incurred a "strike" under 1915(g) by filing this motion on December 6, 2004. Since I have construed the motion as a Rule 60(b) motion, it would seem that the 1915(g) strike system does not apply, since 1915(g) does not apply to motions, only "actions" or "appeals." The "action" here is the civil proceeding touched off by Belton's initial motion for the return of his jewelry, filed in 1991, and since Belton prevailed on his due process claim in that action, the action was not dismissed as frivolous or malicious, nor was it dismissed for failure to state a claim.

On the other hand, Belton's current motion – whether viewed as a Rule 60(b) motion or as a new civil action – is frivolous. Moreover, when Chief Judge Randa directed that Belton's claims be re-cast as a civil action, Belton was warned that if he proceeded with this action and it was determined that it was frivolous or failed to state a claim, he would incur a strike under § 1915(g). In the face of this warning, Belton elected to proceed. Nonetheless, I believe that Belton's present motion is just that – a motion. And the PLRA

does not impose strikes when motions are denied, even if the motions are frivolous. Thus, although it would not be unfair to find that Belton has incurred a strike by proceeding with this action, I do not think he has incurred one. In any event, it is not for me to determine whether this ruling counts as a strike. What counts as strikes under § 1915(g) is a determination to be made by a judge considering whether the prisoner has <u>already</u> struck out. <u>Gleash</u>, 308 F.3d at 761-62. Figuring out whether my denial of Belton's motion counts as a strike is thus a job for a future judge. One thing is certain, though. If Belton appeals this ruling and the court of appeals finds that the appeal is frivolous, Belton will incur a strike. Section 1915(g) applies to all frivolous appeals.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that Belton's motion for leave to incorporate alternate claims (Docket #1) is **DENIED**;

**IT IS FURTHER ORDERED** that the plaintiff's motion for leave to proceed in forma pauperis (Docket #11) be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that the Federal Bureau of Prisons, through the warden of the institution in which plaintiff is incarcerated, shall collect from the plaintiff's prison trust account the $128.05 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20 percent of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

**FINALLY, IT IS ORDERED** that the clerk of court terminate Case No. 07-C-0925.

Dated at Milwaukee, Wisconsin this 2 day of June, 2008.

/s_____
LYNN ADELMAN
District Judge